IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHY LAU, *Administrator of the Estate of Jonathan Lau*, | : : : | |
| Plaintiff, | : : | Civil Action |
| v. | : : | No. 24-cv-6352 |
| CITY OF PHILADELPHIA, *et al.*, | : : | |
| Defendants. | : : : | |

**MEMORANDUM**

**Younge, J.**                                                                                       **July 8, 2025**

**I.      INTRODUCTION**

Approximately four days after Jonathan Lau, a homeless man, was arrested and transported to the Philadelphia Police Department Detention Unit (PDU), he was pronounced dead in his cell. (Compl., ECF No. 1 ¶¶ 38-39, 44, 88).[1] Lau's mother, and administrator of his estate, Plaintiff Kathy Lau, brings this action alleging that the City of Philadelphia and its officers, and YesCare Corporation and its employee, are liable for her son's death. (Compl. ¶¶ 111, 186). Plaintiff's Complaint outlines the alleged events and inactions that support her claim. (Compl ¶¶ 24-111).

Defendants City of Philadelphia, Officer Marc Peterson, Detective McClain, Officer Justin Avery, Officer Nakita Wilson, Corporal Graham, Corporal Alston, Corporal Holman, Corporal Wilkins, Corporal Cason, Officer Henderson, Officer Eric Tomko and Sergeant Onge (collectively, the "Moving Defendants") filed the present Motion to Dismiss Plaintiff's

---

[1] When applicable, the Court adopts the pagination supplied by the CM/ECF docketing system, which does not always match the document's internal pagination.

Complaint.[2] (ECF No. 12). The Court finds this Motion appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth in this Memorandum, Moving Defendants' Motion to Dismiss is GRANTED in PART and DENIED in PART.

## II. FACTUAL BACKGROUND

The facts are presented as pled in Plaintiff's Complaint. On September 5, 2023 at 6:18 P.M., Philadelphia Police Officers Eric Tomko and Marc Peterson approached Lau for suspicion of stealing from the Philadelphia Vietnam War Memorial. (Compl. ¶ 39). After checking Lau's identity, Officer Tomko discovered that Lau had an open warrant in York County, PA, and then took him into custody. (Compl. ¶¶ 42-43). Thereafter, Lau was transported and arrived at the PDU at 7:37 P.M. (Compl. ¶¶ 44-45).

The next day, on September 6, 2023, at 3:50 P.M., Officer Henderson took Lau's fingerprints. (Compl. ¶ 62). Thereafter, on September 7, 2023, at 1:50 P.M., Correctional Officer Nakita Wilson made entries for Lau on the Philadelphia Police Department Medical Checklist. (Compl. ¶ 70). In said checklist, Officer Wilson noted that when Lau was checked into the PDU, he told officers that "he is a heroin addict and is going through withdrawal." (Compl. ¶ 70). However, Officer Wilson wrote that she did not observe any "visible signs of alcohol and/or drug withdrawal." (Compl. ¶¶ 70-71). She also inserted "Medical Alert: Yes" to the following questions on the form: "Are you receiving any type of treatment?" and "Is there anything else you should inform us of to ensure your well being?" (Compl. ¶ 72).

---

[2] The Court included the officers names and titles as reflected in the Complaint. (Compl., ECF No. 1, p. 1-2).

On September 8, 2023, at 12:36 a.m., an unidentified officer attempted to conduct a "Opiate and Benzo assessment" for Lau, but Lau told the officer to "Please Let me be." (Compl. ¶ 74). Lau refused to sign the PDU's Medical Refusal Statement. (Compl. ¶ 74).

Later that day, Deric Timmerman, a registered nurse for YesCare, reported for his shift at the PDU by 7:00 a.m. (Compl. ¶ 76). During his shift, at an unknown time, he observed Lau seated on the toilet in his cell, slumped over the sink, with stale vomit on the floor. (Compl. ¶¶ 80-82). Timmerman advised an unknown officer that Lau should be transported to a hospital. (Compl. ¶ 83). On this same day, at an unknown time, an unidentified PDU supervisor filled out a Prisoner Hospital Case Information Form that indicated Lau was suffering from "severe withdrawal [from] narcotics." (Compl. ¶ 79). Despite these events occurring at an unknown time, Plaintiff alleges that hours after, Officer Avery walked by Lau's cell and noticed that he was unresponsive. (Compl. ¶ 85). At 3:07 p.m., Lau was pronounced dead in the PDU. (Compl. ¶ 87).

Over the approximately four days Lau was in custody at the PDU, Defendant Officers were on duty at various times in the PDU.[3] (Compl. ¶¶ 44-111). During this period, Lau was never brought before a judge nor arraigned at any time. (Compl. ¶¶ 68-69). Plaintiff alleges that Defendant Officers knew Lau was suffering from severe withdrawal symptoms. (Compl. ¶ 60).

Based on these events, Plaintiff presents several counts in her Complaint, five of which are against the Moving Defendants: (1) a failure to protect and denial of medical claim under 42 U.S.C. § 1983 against Moving Defendants based on violations of the Fourteenth Amendment (Count I); (2) a supervisor liability claim under 42 U.S.C. § 1983 against City of Philadelphia based on violations of the Fourteenth Amendment (Count II); (3) a *Monell* claim under 42 U.S.C. § 1983 against City of Philadelphia based on violations of the Fourteenth Amendment (Count III); (4) a

---

[3] "Defendant Officers" refers to the individual officers included in the Moving Defendants.

wrongful death claim against Defendant Officers (Count VI);[4] and (5) a survival action claim against Defendant Officers (Count VII). In the present motion, Moving Defendants requests the Court to dismiss these claims against them. (ECF No. 12).

### III.  LEGAL STANDARD

The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'" *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). All well-pleaded allegations in the complaint must be accepted as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in the plaintiffs' favor. *See McTernan v. City of York*, 577 F. 3d 521, 526 (3d. Cir. 2009). Thus, this Court must examine Plaintiffs' claims to determine whether it can infer that Defendants are liable for the alleged misconduct.

### IV.  DISCUSSION

#### A.  Failure to Protect and Denial of Medical Care Claim (Count I)

---

[4] The Complaint does not include a Count IV and goes straight from Count III to Count V. (Compl.) Count V is not against the Moving Defendants. The Court will refer to the counts as they are articulated in the Complaint. (Compl.).

Plaintiff avers in her Complaint that Moving Defendants' alleged failure to protect her son's wellbeing violated his constitutional rights. This Count against the Moving Defendants is framed as both a Fourteenth Amendment Failure to Protect claim and a Fourteenth Amendment Denial of Medical Care claim.[5] (Compl., p. 16). Moving Defendants claim that Plaintiff did not plead "supporting factual averments upon which the Court could plausibly grant relief for any of the alleged claims." (Def.'s Brief, p. 6). Our review of these claims at this juncture is limited to the Defendant Officers, with a review of the claims against the City of Philadelphia in the next section. With respect to the claims against the Defendant Officers, Count I is dismissed against Officer Peterson, Detective McClain, Officer Avery, Corporal Graham, Corporal Alston, Corporal Holman, Corporal Wilkins, Corporal Cason, Officer Henderson, Officer Tomko and Sergeant Onge. However, Plaintiff is granted leave to amend the articulated deficiencies. *See Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir. 2000) ("Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency.").

Pre-trial detainees have "federally protected liberty interests" that are grounded in the Due Process Clause of the Fourteenth Amendment. *Fuentes v. Wagner*, 206 F.3d 335, 341 (3d Cir. 2000). In applying the Fourteenth Amendment to pretrial detainee claims, the Third Circuit has ruled that "the Fourteenth Amendment affords pretrial detainees protections at least as great as the Eighth Amendment." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003); *see*

---

[5] Courts have understood a "denial of medical care" claim and "inadequate medical care" claim to be the same. *See, e.g., Velez v. Champlin,* No. 18-1324, 2019 WL 1317638 (E.D. Pa. Mar. 21, 2019).

*also Edwards v. Northampton Cnty.*, 663 F. App'x 132, 136–37 (3d Cir. 2016). Accordingly, a pretrial detainees' Failure to Protect and Inadequate Medical Care claims brought under the Fourteenth Amendment are evaluated under the standards used for these respective claims brought under the Eighth Amendment. *See Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 n.4 (3d Cir. 2014) ("This Court has applied the same standard to a failure-to-protect claim under the Fourteenth Amendment as under the Eighth Amendment."); *Natale*, 318 F.3d at 582 ("Fourteenth Amendment claim for inadequate medical care [is evaluated] under the standard used to evaluate similar claims brought under the Eighth Amendment.").

For both claims under the Eighth Amendment, the claim is valid if the prisoner pleads facts that demonstrate that the prison official demonstrated "deliberate indifference." *Thomas,* 749 F.3d at 223 n.4 ("A prisoner has a valid failure-to-protect claim if the prison official shows deliberate indifference to a substantial risk of serious harm to an inmate.") (internal quotation marks omitted); *Natale*, 318 F.3d at 582 ("In order to establish a violation of Daniel Natale's constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."). To successfully plead deliberate indifference, a plaintiff must demonstrate "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Keeling v. Wetzel*, No. 23-2045, 2024 WL 3770307, at *3 (3d Cir. Aug. 13, 2024) (quoting *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997)). In the context of this case, "[a] plaintiff who alleges defendants were deliberately indifferent to his serious medical need must show that (1) he had a serious medical need, (2) defendants were deliberately indifferent to that need, and (3) the deliberate indifference caused harm or physical injury to the plaintiff." *DeJesus v. Delaware through Delaware Dep't of Corr.*, 833 F. App'x 936, 940 (3d Cir. 2020).

Defendants argue that Count I must be dismissed because Plaintiff does not plead facts that would be sufficient to satisfy the standard for each individual Defendant Officer. (Def.'s Brief, p. 6). Instead, according to Defendants, Plaintiff "inappropriately lumps together all of Defendants' alleged conduct." (Reply, ECF No. 20, p. 2). Through this lumping, Defendants explain that Plaintiff (1) failed to allege that four of the Defendant Officers ever saw Lau suffering from a serious medical need; and (2) only alleged conclusory facts related to the remaining eight Defendant Officers. (Reply, p. 1-4). Stated otherwise, Defendants claim that "Plaintiff tries to impute knowledge and actions on all the [Defendant Officers] with no factual basis to do so[.]" (Reply, p. 4). With exception to Officer Wilson, the Court agrees that Plaintiff has not met their pleading burden for the Defendant Officers.

To plead an adequate Section 1983 claim, "a plaintiff must aver facts to show the defendants' personal involvement in the alleged misconduct." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). For this particular claim, an official is personally involved, or acting with deliberate indifference when they are "aware of and recklessly disregard[ed] a substantial risk of serious harm." *DeJesus*, 833 F. App'x at 940 n.6 (internal quotation marks omitted). "A medical need is serious where it 'has been diagnosed by a physician as requiring treatment' or is 'so obvious that a lay person would easily recognize the necessity' of medical attention." *Palakovic v. Wetzel*, 854 F.3d 209, 227 n.23 (3d Cir. 2017). Accordingly, Plaintiff must plead facts demonstrating that each individual Defendant Officer was aware of Lau's medical need for Count I to continue against that Defendant Officer. Here, Plaintiff does not plead that Lau was diagnosed by a physician as requiring treatment, so the Complaint must contain facts that each individual Defendant Officer was aware of some set of facts, such that it was obvious to a lay person that Lau needed medical attention.

The Third Circuit's analysis in *Thomas v. City of Harrisburg*, where a pre-trial detainee suffered from cardiac arrest and died from "cocaine and fentanyl toxicity," is instructive. 88 F.4th 275, 280 (3d Cir. 2023), *cert. denied sub nom. Foose v. Thomas*, 145 S. Ct. 141 (2024), and *cert. denied sub nom. Kinsinger v. Thomas*, 145 S. Ct. 141 (2024). In that case, officers arrested Thomas during a traffic stop because they observed "a large amount of an unknown item inside his mouth" and a "white powdery substance" on his face and lips. *Id.* at 278. As Thomas was being detained, he "spit out a white liquid," and "cocaine rocks [fell] out of [his] shirt." *Id.* at 279. Then, when four additional officers arrived at the scene, the officers that conducted the arrest informed the new officers that they believed that "Thomas had ingested cocaine." *Id.* These newly arrived officers also independently observed facts indicating that Thomas ingested cocaine, including the fact that Thomas had a white substance on his face. *Id.* at 279-280. Accordingly, the Circuit concluded that "each Officer was aware of numerous facts from which one could draw an inference of a substantial risk to Thomas's health." *Id.* at 282. Even though Thomas had denied that he ingested cocaine, the Circuit explained that at the Motion to Dismiss stage of litigation, Thomas' assertion does not "negate the conclusion that a layperson would believe that he had, in fact, ingested a significant amount of cocaine and therefore had a serious medical need." *Id.*

The Complaint constructs a timeline of events that falls short of pleading that each Defendant Officer was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The facts from which an inference could be drawn first begin when Lau is checked-in at the PDU, where Lau says that "he is a heroin addict and is going through withdrawal." (Compl. ¶ 70). This information was included in a document that was "filled out" on September 7, 2023, at 1:50 p.m., nearly two days after Lau was arrested on September 5, 2023. While this check-in must have occurred prior to

when the document was filled out, the exact time is not included in the Complaint. Next, on September 8, 2023, at 12:36 a.m., an unknown officer attempted to perform an "Opiate and Benzo assessment." Then, that same day, sometime after 7:00 a.m. when Timmerman reported for his shift, he observed Plaintiff slumped over the sink, as stale vomit sat in the cell. At some unknown time, an unknown officer filled out a report that said that Lau was suffering from "severe withdrawal [from] narcotics." Finally, after Officer Avery saw that Lau appeared unresponsive, and checked his pulse, Lau was pronounced dead on September 8, 3:07 p.m. in the PDU.

The Complaint does not plead that Officer Tomko, Officer Peterson, and Det. McClain were present during these events, so they could not have been aware of Lau's symptoms of withdrawal. Officers Tomko and Peterson interactions with Lau are limited to his arrest and placement into custody. As explained, any facts that could have made a lay person aware of Lau's serious medical need did not occur *until* Lau was checked-in at the PDU. Because the Complaint does not allege that Officers Tomko and Peterson were present during that moment, or any other moment where they could have been made aware of such facts, Plaintiff has failed to plead personal involvement for these Defendant Officers. With respect to Det. McClain, the Complaint only pleads that he "generated a Philadelphia Police Department Arrest Report." This fact does not demonstrate that Det. McClain was ever in the same vicinity as Lau, let alone made aware of facts indicating Lau's need for medical attention. Accordingly, as the Complaint is deficient of facts to support such awareness for these Defendant Officers, Count I against Officer Tomko, Officer Peterson, and Det. McClain is dismissed.

While the Complaint places the remaining Defendant Officers in the PDU during the timeline of facts that could have made them aware, the Complaint impermissibly relied on conclusory statements to manufacture awareness for Corporal Alston, Corporal Cason, and Officer

Henderson.[6] Plaintiff pleads that Corporal Cason "knew or should have known that [Lau] needed to be transported to a hospital and failed to act," (Compl. ¶ 60), that Corporal Alston "knew [Lau] was suffering from severe withdrawal symptoms." (Compl. ¶ 50), and that Officer Henderson "knew [Lau] was in need of immediate medical assistance." These statements are nothing more than a formulaic recitation of the elements of Plaintiff's claim because they lack factual content that support their assertions. *See Santiago v. Warminster Twp.,* 629 F.3d 121, 132 (3d Cir. 2010). In a 12(b)(6) motion, as here, the Court is instructed to disregard such statements. *See id.* Further, to establish personal involvement, "[a]llegations of participation or actual knowledge and acquiescence ... must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Simply claiming what these Defendant Officers knew, without facts to support an inference that these Defendant Officers were aware that Lau needed serious medical attention, is not sufficiently particular for personal involvement. *See*, *e.g., Hayes v. Gilmore*, 802 F. App'x 84, 87 (3d Cir. 2020) (holding that conclusory statements do not satisfy the requirements of personal involvement).

Beyond these conclusory statements, the Complaint does not sufficiently plead that Corporal Graham, Corporal Alston, Corporal Holmon, Corporal Wilkins, Corporal Cason, Officer Henderson, and Sgt. Onge, were aware of facts from which once could draw the inference that Lau needed medical attention. For each of these Defendant Officers, aside from Sgt. Onge, the Complaint explains that they "personally observed" Lau at some point while he was in the PDU. (Compl. ¶ 47, 49, 53, 56, 59, 60, and 85). However, even when taking as true that each of these officers did see Lau in custody, it is not reasonable to then infer that each of these officers observed

---

[6] The Complaint lists the shifts that each of these Defendant Officers were on duty at the PDU. Defendants do not contest that these Defendant Officers were working and present in the PDU during these times.

facts that would cause a lay person to think that Lau needed medication attention. Unlike in *Thomas*, these Defendant Officers did not personally observe nor were informed of facts related to Lau's withdrawal. At most, as explained above, the Complaint only pleads that these Defendant Officers were working in the PDU while Lau was detained. However, Defendant Officers mere presence does not *per se* establish their awareness.[7] Because the Complaint does not plead that each of these Defendant Officers were actually aware of facts that one could infer that Lau needed medical care, Count I against Corporal Graham, Corporal Alston, Corporal Holmon, Corporal Wilkins, Corporal Cason, Officer Henderson, and Sgt. Onge is dismissed.

With respect to Officers Wilson and Avery, Plaintiff *does* sufficiently plead facts that plausibly demonstrates their awareness. On September 7, 2023, the day before Lau was pronounced dead, Officer Wilson filled out a medical checklist for Lau, which included information that Lau said that "he is a heroin addict and that he is going through withdrawal" at check-in. While Wilson also wrote in said report that she did not observe any "visible signs of alcohol and/or drug withdrawal," at the pleading stage, Officer Wilson's knowledge of Mr. Lau's statement at check-in is a fact from which it can be inferred that Officer Wilson was aware that Lau needed medical attention. The Complaint also demonstrates that Officer Avery was aware, as Plaintiff alleges that Officer Avery walked by Lau's cell and saw that he was unresponsive. However, the Complaint goes on to plead that Officer "Avery went into [Lau's] cell and checked his pulse." This action demonstrates that Officer Avery was not deliberately indifferent to Lau's

---

[7] "[A] *res ipsa loquitur* argument… has no place in a case based on § 1983. The fact that an injury occurred while a plaintiff was in police custody does not establish a § 1983 claim; the plaintiff must specifically identify the act that caused his injury." *Smith v. Cpl. Louriero*, No. 16-0741, 2017 WL 2952819, at *3 (M.D. Pa. June 9, 2017), *report and recommendation adopted sub nom. Smith v. Louriero*, No. 16-0741, 2017 WL 2926020 (M.D. Pa. July 7, 2017).

need after becoming aware of said need. Accordingly, Count I is dismissed against Officer Avery, but will continue to discovery against Officer Wilson.

### B. City Of Philadelphia Claims

Municipalities can be held liable under § 1983 for violating a plaintiff's constitutional rights. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91 (1978). This liability is not triggered by a theory of *respondeat superior*. *Id.* at 691; *see also A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.,* 372 F.3d 572, 580 (3d Cir. 2004) ("A governmental entity… cannot be liable under a theory of *respondeat superior* or vicarious liability."). Instead, the Supreme Court in *Monell* explained that a municipality is liable under § 1983 "when [its] execution of a government's policy or custom" inflicts a § 1983 injury. 436 U.S. at 694. Accordingly, the Third Circuit has articulated two ways for a § 1983 claim to proceed: (1) "a plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries;" or (2) demonstrate that the customs "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).

Plaintiff asserts three claims under Section 1983 against the City of Philadelphia (Counts I-III), which the Court construes as attempts to state a municipal liability claim. Count I states the failure to protect claim analyzed above, Count II presents "supervisor liability", and Count III asserts "municipal liability." In all three counts, Plaintiff relies on the same policies and customs to support her claims. As a result, these Counts against the City of Philadelphia are redundant. Because Count III is the most articulate attempt at a claim under *Monell*, and the City can't be held liable under a theory of respondeat superior, the Court dismisses Count I and Count II against the City with prejudice. *See, e.g., Est. of Paone by & through Paone v. Plymouth Twp.*, No. 22-2178, 2023 WL 5044952, at *3 (E.D. Pa. Aug. 8, 2023) ("[T]he Township cannot be liable on a

respondeat superior theory, the Court dismisses the Township <u>only</u> from Count I."); *Funches v. Bucks Cnty.*, 586 F. App'x 864, 867 (3d Cir. 2014) ("[W]e agree with the District Court that the Funches' claims against Bucks County and the Clerk's Office must be dismissed because they were improperly based on a theory of respondeat superior."); *Gardner v. N.J. State Police*, No. 15-8962, 2016 WL 6138240, at *3 (D.N.J. Oct. 21, 2016) (dismissing excessive force claim against the township as duplicative because plaintiff also brought *Monell* claim against it).

With Respect to Count III, as explained above, Plaintiff can establish the City's liability under *Monell* by demonstrating that their injuries were either caused (1) by a policy or custom; or (2) by a failure to train. *See Forrest, supra.* Plaintiff invokes the first theory, arguing that "the City of Philadelphia had a de facto policy of not providing adequate medical care to detainees." (Response, ECF No. 19, p. 24). According to the Circuit, a *de facto* policy, or "[a] custom is an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." *Id.* (internal quotation marks omitted).

Defendants argue that Plaintiff's pleading of an unconstitutional custom is deficient. In addition to identifying the custom, Plaintiff must demonstrate an "affirmative link" between the custom and the alleged constitutional violation. *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). "This is done for a custom if [Plaintiff] demonstrates that [Defendant] had knowledge of 'similar unlawful conduct in the past, ... failed to take precautions against future violations, and that [its] failure, at least in part, led to [his] injury.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)). Plaintiff "does not need to identify a responsible

decisionmaker in his pleadings" nor *"*prove that the custom had the City's formal approval." *Est. of Roman*, 914 F.3d at 798.[8]

As Defendants point out, the Complaint fails to demonstrate that the City had knowledge of similar unlawful conduct, and therefore must be dismissed without prejudice. However, like the claims against the Defendant Officers, Plaintiff is granted leave to amend this deficiency. *See Shane, supra.*

### C.  Wrongful Death and Survival Action Claims (Count VI and VII)

Plaintiff invokes Pennsylvania's Wrongful Death Act, 42 Pa. C. S. § 8301, against the Defendant Officers, which allows "the spouse, children or parents of the deceased" to "recover damages for the death of [the deceased] caused by the wrongful act or neglect or unlawful violence or negligence of another." 42 Pa. C. S. § 8301. Plaintiff also pleads a claim pursuant to Pennsylvania's Survival Act, 42 Pa. C. S. § 8302, against the Defendant Officers. The Survival Act "authorizes a decedent's estate to assert claims that the decedent could have asserted had he lived." *Ewing v. Potkul*, 171 A.3d 10, 15 (Pa. Commw. Ct. 2017). Like their argument against Counts I, Moving Defendants claim that Plaintiff did not plead sufficient facts to support these claims.

These claims are not substantive causes of actions, but "rather, they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death." *Est. of Paone by & through Paone v. Plymouth Twp*., No. 22-02178, 2024 WL 5107592, at *8 (E.D. Pa. Dec. 13, 2024). As presented in this case, "[a] viable § 1983 claim can serve as the underlying cause of action supporting a Wrongful Death or Survival action." *Duvall v. Hustler*, 447 F. Supp. 3d 311,

---

[8] Defendants unsuccessfully argue that Plaintiff's failure to plead a specific decisionmaker warrants dismissal of her *Monell* claim.

338 (E.D. Pa. 2020) (collecting cases). Accordingly, because Plaintiff only has a viable claim under § 1983 against Officer Wilson, Plaintiff's Wrongful Death and Survival Action claims are viably supported, so Count VI and Count VII will not be dismissed against Officer Wilson, but dismissed against the remaining Defendant Officers. *See id.* at 338-339.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in PART and DENIED in PART.

An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ John Milton Younge
**Judge John Milton Younge**